1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
10

11   SHIKEB SADDOZAI,                    Case No. 20-cv-07534 BLF (PR)
                    Plaintiff,
12                                        **ORDER DENYING DEFENDANT'S**
           v.                             **MOTION FOR SUMMARY**
13                                        **JUDGMENT; REFERRING TO**
                                          **SETTLEMENT PROCEEDINGS;**
14   M. B. ATCHLEY, et al.,               **STAYING CASE; INSTRUCTIONS**
                                          **TO CLERK**
15                  Defendants.
16                                        (Docket No. 72)
17

18        Plaintiff, a state prisoner, filed the instant *pro se* civil rights action pursuant to 42

19   U.S.C. § 1983, against defendants at Salinas Valley State Prison ("SVSP").  The third

20   amended complaint ("TAC") is the operative complaint in this action.  Dkt. No. 38.  The

21   Court found the TAC stated three cognizable claims against the sole defendant, S.

22   Tomlinson, and ordered the matter served; all other defendants and claims were dismissed.

23   Dkt. No. 40.  The Court later granted Defendant Tomlinson's motion to dismiss two claims

24   for failure to state a claim and ordered briefing on the remaining free speech claim under

25   the First Amendment.  Dkt. No. 69.

26        Defendant filed a motion for summary judgment on the grounds that the undisputed

27
28

1   facts show that Plaintiff's First Amendment rights were not violated.  Dkt. No. 72-3.[1]

2   Plaintiff filed an opposition and declaration.  Dkt. Nos. 81, 81-2.  Defendant filed a reply.

3   Dkt. No. 84.

4          For the reasons discussed below, Defendant's motion for summary judgment is

5   **DENIED**.

6

7                                  **DISCUSSION**

8   **I.    Statement of Facts**

9          This action involves the allegation that Defendant S. Tomlinson, a Senior Librarian

10  at SVSP, violated Plaintiff's First Amendment right to free speech when she expelled him

11  from the library for complaining on July 21, 2020.  Dkt. No. 69 at 2.

12         Defendant requests judicial notice ("RJN") under Federal Rules of Evidence 201, of

13  the various court cases and motions filed by Plaintiff as shown under Exhibits 3 and 4.

14  Dkt. No. 72-2.  Under Rule 201, the Court may judicially notice a fact that is not subject to

15  reasonable dispute because it "(1) is generally known within the trial court's territorial

16  jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy

17  cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Furthermore, a district court

18  "may take notice of proceedings in other courts, both within and without the federal

19  judicial system, if those proceedings have a direct relation to matters at issue."  *Bias v.*

20  *Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations

21  omitted) (granting request to take judicial notice in § 1983 action of five prior cases in

22  which plaintiff was pro se litigant, to counter her argument that she deserved special

23  treatment because of her pro se status).  Accordingly, the Court finds good cause to grant

24  Defendant's request under Fed. R. Evid. 201(b).

25  _____

26  [1] In support, Defendant provides the declaration of Deputy Attorney General, counsel for
    Defendant, along with the deposition transcript of Plaintiff taken on October 31, 2023,
27  Dkt. No. 72-4 (Ex. 1), and the declaration of Defendant S. Tomlinson, Dkt. No. 72-5.

28                                        2

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff also filed a request for judicial notice of several attached exhibits, which are in addition to his opposition and other exhibits.  Dkt. No. 81-1.  His request is 39 pages long and includes legal arguments beyond that of a mere request for judicial notice.  *Id.* at 1-39.  For example, Plaintiff asserts he has been "unconstitutionally denied access to the courts and prevented from assisting in his own defense due to state created impediments which adversely effected [his] personal liberty interests and which taken together denied [him] a fair review of all legal proceedings."  *Id.* at 2.  However, this matter involves only a single claim of free speech violation; his right of access to the courts and denial of liberty interests claims have been dismissed.  Accordingly, this argument is irrelevant and beyond the scope of this action.  Furthermore, the attached exhibits include various memoranda concerning the law library, several "Daily Program Status Report, Part A - Plan of Operation /State & Inmate Notification[s]" for various dates, a grievance, a letter from the Office of the Inspector General, and documents related to Plaintiff's alleged disability and accommodations.  *Id.* at 81-1 at 40-77.  Plaintiff's request includes no relevant argument as to why the offered exhibits are appropriate for judicial notice under Rule 201(b), nor does he identify what specific facts therein are appropriate for judicial notice.  Accordingly, Plaintiff's request for judicial notice is DENIED.  The arguments raised in the request for judicial notice and the attached exhibits shall not be considered in deciding Defendant's summary judgment motion.

## B.    Access to Law Library

Inmates can access the law library by requesting Priority Legal User ("PLU") status.  California Code of Regulations, tit. 15, § 3122 governs PLU status and states in relevant part:

> (b) Inmates who have established court deadlines may apply for Priority Legal Status (PLU) to the prison law libraries. Inmates who are granted PLU status based on their application shall receive higher priority to prison law library resources than other inmates. All inmate who are not on PLU status are on General Legal User ("GLU") status.

3

…

> (7) PLU status is intended to assist inmates to do legal work in a quiet law library setting.  An inmate on PLU status who, while in the law library, is observed by staff to act in an unreasonably disruptive manner or to engage in non-legal work shall be removed from the PLU list and shall be dismissed from the library for that day.  Inmates who are removed from the PLU list for these reasons shall be ineligible to reapply for PLU status for 30 calendar days, but may continue to use the law library on GLU status.

Cal. Code Regs. tit. 15, § 3122(b),(7).

Once a request for a PLU appointment is received, librarian staff schedule them subject to availability, which can be impacted by staffing issues and the number of inmates wishing to use the library.  *Id.* at § 3122(b)(4).  Inmates who are removed from the PLU list under subsection (7) may continue to use the law library on GLU status, until they can reapply for PLU status.  *Id.* at §§ 3122, 3123(b).  Inmates who cannot access the library, for whatever reason, can use the paging system whereby they put their documents for copying in an envelope, and then mail them to the law library using the prison mailing system.  Pl. Dep. at 29:16-23, Dkt. No. 72-4 (Ex. 1); Cal. Code of Reg., tit. 15, § 3123(c).

### C.    Incident on July 21, 2020[2]

According to the SAC, on July 21, 2020, Plaintiff went to the law library for a scheduled appointment.   Dkt. No. 38 at ¶ 1.  He handed Defendant Tomlinson his "only original habeas corpus petition with exhibits to be copied, ready to be sent to the court." *Id.*  According to the allegations in the TAC, Defendant read Plaintiff's confidential legal documents and kept the originals and copies without a written explanation.  *Id.* at ¶ 2. Defendant sounded the alarm and had correctional officers remove Plaintiff from the library in handcuffs, and later issued Plaintiff an RVR.  *Id.* at ¶ 3.  Plaintiff alleges that Defendant did so "as an adverse action for complaining."  *Id.*

According to Defendant, Defendant Tomlinson reviewed the documents pursuant to

---

[2] The following facts are undisputed unless otherwise indicated.

prison policy to make sure they qualified as legal documents entitled to copying under the CDCR regulations.  Tomlinson Decl. ¶ 3, Dkt. No. 72-5 at 2.  Defendant authorized one document to be copied, but determined the second document did not comply with the regulations.  *Id.*  Defendant returned all original documents to Plaintiff.  *Id.*  Later that day, when Defendant saw another librarian copying Plaintiff's document that had been deemed non-compliant, she informed the librarian of the issue and returned all documents to Plaintiff.  *Id.* at ¶ 4.  Plaintiff then became argumentative, demanding copies and accusing Defendant of reading his legal mail.  *Id.*  According to Defendant, Plaintiff was not listening to her instructions and was being disrespectful, as well as acting as if the copying regulations did not apply to him.  *Id.*  Defendant informed Plaintiff that he needed to leave because she felt his conduct was disruptive to other patrons and staff.  *Id.*  Office Berry entered the library on his own initiative and informed Plaintiff that he needed to leave the library.  *Id.* at ¶ 5.  According to the library log provided by Defendant Tomlinson, the following notation was indicated for July 21, 2020: "Disruptive. I/M became upset and argumentative when copy request denied.  Removed by C/O Berry at approx.10:20."  Tomlinson Decl., Ex. 2, Dkt. No. 72-5 at 4.

Defendant Tomlinson states that she did not issue a rules violation report to Plaintiff.  *Id.* at ¶ 6.  She also states that as the Senior Librarian, she receives, reviews, and approves all PLU requests to use the law library.  *Id.* at ¶ 7.  Defendant has received multiple subsequent requests from Plaintiff and approved them.  *Id.*  Defendant denies barring Plaintiff from entering the library at any point.  *Id.*

Plaintiff filed a declaration which does not address the July 21, 2020 incident.  *See generally* Dkt. No. 81-2.  The declaration only makes generalized allegations against "staff" and describes actions by individuals that occurred in 2021, and do not involve Defendant Tomlinson.  *Id.* at ¶¶ 23-31.  On the other hand, Plaintiff makes allegations in his deposition and in his opposition brief that contradict Defendant Tomlinson's account.  During his deposition, Plaintiff stated that Defendant Tomlinson did not return his habeas

petition. Pl.'s Dep. at 33:8. He also stated that Defendant Tomlinson pushed a silent alarm located on her belt which caused multiple officers to rush into the law library. *Id.* at 47:9-17. Plaintiff stated that, "I know from my… position, I didn't do anything to deserve me to be removed." Pl.'s Dep. at 49:20-21. Lastly, he stated that he "didn't recollect any explanation" for his removal, *id.* at 50:12-13, or "if there [were] any exchanges of words," *id.* at 57:15-16. In his opposition, Plaintiff asserts that when Defendant refused to return his documents, Plaintiff "remained calm and requested Defendant to release him from inside the law library room because Plaintiff was locked inside law library requiring correctional officer (Berry) to be called in to the law library to unlock the door and release Plaintiff to that he can report the incident to supervising custody officials at the program office." Dkt. No. 81 at 73. Plaintiff states that Defendant would not allow Plaintiff to report the matter and "pushed the silent alarm before Plaintiff had an opportunity to contact supervisory officials." *Id.*

### D.   Plaintiff's Continued Legal Activity

In the two months after the incident, Plaintiff went to the law library on six separate dates: July 27, 2020, July 28, 2020, August 11, 2020, August 12, 2020, August 19, 2020, and August 26, 2020. Each appointment request completed by Plaintiff was granted. Tomlinson Decl, Ex. 2, Dkt. No. 72-5 at 4-5.

Plaintiff also filed several legal documents between the months of July through December 2020. Specifically, Plaintiff initiated three appeals in the Ninth Circuit, as well as the instant action in October 2020. RJN Ex. 3, Dkt. No. 72-2 at 4-5. Plaintiff also filed numerous filings in various civil cases he was litigating. *Id.*, Ex. 4, Dkt. No. 72-2 at 7-8.

## II.   Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp*., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary

7

judgment.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id.*

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders); *see Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (in ERISA case where the issue was whether plaintiff had actual knowledge of an alleged fiduciary breach, the court indicated that plaintiff's denial of knowledge could be discredited at summary judgment stage if it was blatantly contradicted by electronic records showing plaintiff viewed a website containing relevant disclosures of investment decisions).

## A.    Free Speech

A prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)) (internal quotation marks omitted).[3]  Accordingly, a prison regulation that impinges on a prisoner's First Amendment right to free speech is valid only "if it is reasonably related to legitimate penological interests."  *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see, e.g.*, *Hargis v. Foster*, 312 F.3d 404, 410 (9th Cir. 2002) (rule

---

[3] The First Amendment is made applicable to the states through the Fourteenth Amendment . *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 n. 43 (1982); *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

8

subjecting prisoners to discipline for coercing guard into not enforcing prison rules was, on its face, reasonably related to legitimate penological interests).

The Supreme Court has identified four factors to consider when determining the reasonableness of a prison regulation: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-90.

A claim that the application of a prison regulation violated a prisoner-plaintiff's First Amendment right to free speech does not end even if the regulation, on its face, satisfies the *Turner* test. *Hargis*, 312 F.3d at 410. Although facially valid, the regulation may be unconstitutional as applied to the prisoner-plaintiff. *See id.* at 410-12 (finding triable issue as to whether prison officials' discipline of a prisoner for coercion, for his statement to a prison guard that the guard's actions and statements could come up in pending state court litigation, violates the prisoner's right to free speech, when a jury could reasonably find that charging the prisoner with such a severe disciplinary infraction was an exaggerated response to prisoner's conduct).

Defendant asserts that the regulation at issue, Cal. Code Regs. tit. 15, § 3122, is constitutional under the *Turner* factors because it is related to internal order and discipline of the law library and Plaintiff still had access to the law library after the incident. Dkt. No. 72 at 10-11. Under the first *Turner* factor, Defendant asserts that providing a quiet environment for library patrons to conduct legal work is a legitimate penological interest and the regulation allowing for disruptive individuals to be dismissed is constitutional. *Id.* at 11. Defendant points out that rules similar to § 3122 are in place at a majority of public libraries which also enforce them by dismissing patrons. *Id.* In the public library context,

these rules and regulations have been recognized as constitutional.  *Id.*, citing *Brown v. State of La.*, 383 U.S. 131, 142 (1966) (recognizing the library as a place of quiet contemplation); *Van Den Heuvel v. Dorothy*, No. 22:1-CV-2176 (TLN) (CKD) PS, 2022 WL 95237v 3 (E.D. Cal. Jan. 10, 2022) (a libraries enforcement powers are at its peak when protecting staff and patrons).  Defendant also asserts that the Ninth Circuit has recognized that limiting an inmate's First Amendment rights for the furtherance of correctional goals in constitutional, such as in *Mauro v. Arpaio*, 188 F3d 1054, 1060 (9th Cir. 1999), which upheld a regulation prohibiting inmates from possessing sexually explicit material, citing the relationship between the possession of such materials and the problems sought to be addressed by the policy, the sexual harassment of female officers, jail security, and rehabilitation of inmates.  *Id.* at 12.  Accordingly, Defendant asserts the first *Turner* factor is satisfied.

Defendant also asserts that under the second *Turner* factor, Plaintiff continued to have access to the law library after the incident and thus alternative means remained available.  Dkt. No. 72-3 at 12.  Defendant asserts that Plaintiff was never restricted from further access and that he utilized the library extensively during his incarceration, including during July and August 2020.  *Id.*  Nor did his removal from the library impact his access to the courts since he was able to make numerous filings and initiated several cases in the months after the incident.  *Id.* at 13.  Lastly, Defendant asserts that even if Plaintiff could not access the law library, he had access to paging services by which he could request legal material be delivered by library staff.  *Id.*  Defendant asserts that the records show that Plaintiff did utilize the paging service to make copies of documents.  *Id.*, citing Pl.'s Dep. at 29:18-23, Dkt. No. 72-4.

Thirdly, Defendant asserts that the third *Turner* factor also weighs in their favor because allowing inmates to argue and make demands from staff would disrupt the library used by other inmates to conduct legal work and reduce the entire populations' access to the courts.  Dkt. No. 72-3 at 13.  Defendant contends that not promptly removing

10

1   disruptive inmates could cause increased safety concerns for staff.  *Id.* at 14.  As for the

2   final *Turner* factor, Defendant asserts that Plaintiff has not identified any reasonable

3   alternative that would have accommodated him at a *de minimis* cost.  *Id.*, citing *Turner*,

4   482 U.S. at 90-91.  Defendant concludes that with all the *Turner* factors satisfied,

5   Plaintiff's free-speech cause of action should be dismissed.

6        Lastly, Defendant asserts that the regulation was applied to Plaintiff in a

7   constitutionally valid manner.  Dkt. No. 72-3 at 14.  Defendant asserts that Plaintiff is

8   unable to remember anything that would create a triable issue of fact in this regard.  *Id.*

9   Defendant points out that Plaintiff does not recall the reason he was removed from the

10  library, the date that the removal occurred, or even the events that led to his expulsion.  *Id.*,

11  citing Pl.'s Dep. at 49:16-50:9, 17:12-14, 47:9-17.  Defendant also asserts that Plaintiff

12  does not recall any of the conversation between himself and Defendant on that day or why

13  she refused to copy his documents.  *Id.* at 18-21.  In contrast, Defendant recalls that she

14  rejected Plaintiff's documents for copying because it was non-compliant with the

15  regulations, and that Plaintiff later became unreasonably disruptive when she alerted

16  another librarian to this issue.  Dkt. No. 72-3 at 15; Tomlinson Decl. ¶ 4.  Then Officer

17  Berry came to the library on his own initiative and escorted Plaintiff out of the library.  *Id.*

18  Based on this evidence, Defendant asserts that she acted appropriately and applied the

19  regulation in a valid manner.  *Id.*

20       In opposition, Plaintiff submits a lengthy brief asserting that his rights under Equal

21  Protection clause, due process, and First Amendment were violated.  Dkt. No. 81.  With

22  regard to the First Amendment, Plaintiff asserts that his rights involving access to the

23  courts and against retaliation were violated, in addition to his right to free speech.  *Id.* at

24  59-71, 87-90.  However, the only remaining claim in this action is the free speech claim, as

25  all other claims and defendants have been dismissed from this action.  *See* Dkt. Nos. 40,

26  69.  Accordingly, most of Plaintiff's arguments are irrelevant and beyond the scope of this

27  action, such as his assertion of supervisor liability against Warden Atchley who was

28

United States District Court
Northern District of California

dismissed from this action on February 17, 2022, because Plaintiff did not include him as a defendant in the second amended complaint.  Dkt. No. 28; *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  Accordingly, only those arguments that are relevant to his free speech claim shall be considered, specifically pages 65 through 73 of his opposition.  Dkt. No. 81 at 72-80.

Plaintiff asserts that Defendant "may not exercise unfettered discretion by denying Plaintiff access for expressive activity especially those that defendant encouraged and placed blame on Plaintiff."  Dkt. No. 81 at 72, citing to *Marsh v. Alabama*, 326 U.S. 501 (1946).  Plaintiff asserts that the claim that he was disruptive is "false… without proof, witnesses, or a disciplinary action."  *Id.*at 75.  He asserts that under *Brown*, peaceful and quiet protestors are allowed to assemble in the reading room of a public library.  *Id.* at 76. He asserts that Defendant's allegation that he was being disruptive is "untrue," but that even if it were true, "it would be based solely on Defendant's own personal bias bigoted thoughts and views."  *Id.* at 77.

In reply, Defendant asserts that Plaintiff has not provided any competent evidence. Dkt. No. 84 at 2.  Defendant points out that Plaintiff has only provided a voluminous amount of grievances that concern events not alleged in the TAC.  *Id.*  Defendant also points out that Plaintiff's exhibits directly contradict his notion that Defendant did not return or that she destroyed his documents on July 21, 2020.  *Id.*, citing Dkt. No. 81 at 66, 153.  Defendant asserts that Plaintiff's numerous grievances demanding daily access to the library do not demonstrate that Defendant Tomlinson violated his right to speech on July 21, 2020.  *Id.*  Defendant contends that she has established that there was a legitimate penological objective for removing Plaintiff from the law library.  *Id.* at 3.

Viewing the evidence in the light most favorable to Plaintiff, Defendant has failed to establish the absence of genuine issues of material facts.  It is undisputed that the regulation at issue, Cal. Code Regs. tit. 15, § 3122(b), satisfies the *Turner* factors on its face.  Rather, Plaintiff challenges the manner in which the regulation was applied to him.

12

Contrary to Defendant Tomlinson's version of events, Plaintiff denies being disruptive to warrant being expelled from the library.  Although Defendant challenges Plaintiff's failure to recall certain aspects of the event during his deposition, such as the date and what specific words were exchanged, Plaintiff's recollection is not inconsistent with the allegations in the SAC or his statements in opposition.  He consistently alleges that when he gave legal documents to be copied, Defendant took them and refused to copy them.  And while Defendant asserts that Plaintiff responded by being argumentative and disruptive, Plaintiff asserts that he calmly voiced his complaints.  Whether Plaintiff's response was sufficiently disruptive to warrant ejection from the library under prison regulations is clearly a material fact which is in dispute.

Furthermore, although Plaintiff's reliance on *Marsh* is misplaced as that case does not apply to the circumstances at bar,[4] he is correct that Defendant Tomlinson offers no evidence corroborating her declaration; the only other evidence she offers is her own library log.  However, corroboration is not a matter for summary judgment because that would improperly veer into weighing the evidence which is not appropriate here.  In evaluating a summary judgment motion, the facts must be construed in the light most favorable to Plaintiff as the nonmoving party.  *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

In conclusion, it simply cannot be said that Plaintiff's version of the facts submitted in opposition to summary judgment is so blatantly contradicted by his deposition testimony that no reasonable jury could believe it.  *See Scott*, 550 U.S. at 380-83.  What the Court finds troubling is that Plaintiff's grievance challenging Defendant Tomlinson's failure to copy his legal documents and confiscating them was granted on appeal.  Dkt. No. 38-1 at 15.  The Office of Appeals ("OA") stated that there was "insufficient evidence to support the conclusion that the institution complied with section 3162(d)."  *Id.*  Among the lack of evidence, the OA found the institution failed to articulate how Plaintiff's requested legal

---

[4] *Marsh* involved a municipal ordinance that prohibited the distribution of religious literature in a public street.

documents were in violation of regulations and to describe what type of legal documents were presented for duplication services. *Id.* Accordingly, the inference is that Plaintiff may well have been justified in "calmly" complaining when his request for copies was denied. If Plaintiff's complaining was not disruptive, then Defendant unconstitutionally applied a regulation for the sole purpose of silencing Plaintiff's speech which is not permitted under *Brown*, 383 U.S. at 142.

Based on the record, Defendant has failed to show that there is an absence of evidence to support Plaintiff's case. As such, there are disputed issues of material fact with respect to the free speech claim against Defendant Tomlinson. *See Celotex Corp.*, 477 U.S. at 323. Accordingly, Defendant's motion for summary judgment must be denied.

### B. Qualified Immunity

Defendant asserts in the alternative that she is entitled to qualified immunity. Dkt. No. 72-3 at 15.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

A right is clearly established if it were "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). "The right must be

14

1    settled law, meaning that it must be clearly established by controlling authority or a robust

2    consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477

3    (9th Cir. 2019).  If the law did not put the officer on notice that his conduct would be

4    clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Saucier*,

5    533 U.S. at 202.

6          A court considering a claim of qualified immunity must determine whether the

7    plaintiff has alleged the deprivation of an actual constitutional right and whether such right

8    was clearly established such that it would be clear to a reasonable officer that his conduct

9    was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223

10   (2009) (overruling the sequence of the two-part test that required determination of a

11   deprivation first and then whether such right was clearly established, as required by

12   *Saucier*, 533 U.S. at 194); *Henry A.*, 678 F.3d at 1000 (qualified immunity analysis

13   requiring (1) determining the contours of the clearly established right at the time of the

14   challenged conduct and (2) examining whether a reasonable official would have

15   understood that the challenged conduct violated such right).  The court may exercise its

16   discretion in deciding which prong to address first, in light of the particular circumstances

17   of each case.  *See Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is

18   often appropriate and beneficial, it is no longer mandatory).  "[U]nder either prong, courts

19   may not resolve genuine disputes of fact in favor of the party seeking summary judgment,"

20   and must, as in other cases, view the evidence in the light most favorable to the non-

21   movant.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).  For example, regarding the

22   first prong, the threshold question must be: Taken in the light most favorable to the party

23   asserting the injury, do the facts alleged show the officer's conduct violated a

24   constitutional right?  *Saucier*, 533 U.S. at 201.

25         Defendant's qualified immunity argument must be rejected because she does not

26   present the facts in the light most favorable to Plaintiff as the nonmoving party.  *See Tolan*,

27   134 S. Ct. at 1866.  Defendant asserts that Plaintiff's request for copies was denied for

28                                        15

United States District Court
Northern District of California

valid reasons and that she properly expelled him from the library only after he became disruptive under the regulations. However, the facts viewed in his favor are that Plaintiff made a valid claim for copies which Defendant denied without justification. When Plaintiff "calmly" voiced his complaint about the refusal, Defendant expelled him from the library. As such, it simply cannot be said that Defendant Tomlinson had a "reasonable, but mistaken belief" that she could expel Plaintiff from the library simply for exercising his First Amendment rights and complaining about the unjustified denial for copies. *Saucier*, 533 U.S. at 202. Accordingly, Defendant has not established that she is entitled to qualified immunity on the free speech claim.

### C.   New Claims

Plaintiff raises a new claim for the first time in this action, alleging that Defendant's "unauthorized negligent or intentional deprivation of Plaintiff's legal document properties require meaningful post-deprivation remedies." Dkt. No. 81 at 91. However, Plaintiff was granted leave three times to file an amended complaint that adequately pleaded cognizable claims. *See* Dkt. Nos. 14, 21, 36. He sets forth no reason why he should now be permitted to amend to add a new claim this late in the proceedings nor any explanation as to why he did not attempt to include this claim in his previous amendments. Accordingly, leave to amend add new claims shall not be granted.

### III.   Referring Case to Settlement Proceedings

The Court has established a Pro Se Prisoner Settlement Program under which certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement. In light of the existence of triable issues of fact as to whether Defendant violated Plaintiff's free speech rights under the First Amendment, the Court finds the instant matter suitable for settlement proceedings. Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Settlement Program.

///

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1.      Defendant Tomlinson's motion for summary judgment on the free speech claim under the First Amendment is **DENIED**.  Dkt. No. 72.

2.      The instant case is **REFERRED** to Judge Robert M. Illman pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claim in this action against Defendants as described above.  The proceedings shall take place **within ninety (90) days** of the filing date of this order.  Judge Illman shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

3.      Other than the settlement proceedings ordered herein, and any matters Magistrate Judge Illman deems necessary to conduct such proceedings, this action is hereby **STAYED** until further order by the court following the resolution of the settlement proceedings.

4.      The Clerk shall send a copy of this order to Magistrate Judge Illman in Eureka, California.

This order terminates Docket No. 72.

**IT IS SO ORDERED.**

Dated:  __August 5, 2024_____

BETH LABSON FREEMAN
United States District Judge

Order Denying MSJ
PRO-SE\BLF\CR.20\07534Saddozai_deny.msj&refer.Illman

17